## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **WISCONSIN RIGHT** | ) | |
| **TO LIFE, INC.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civ. No. 04-1260 (DBS, RWR, RJL)** |
| | ) | |
| **FEDERAL ELECTION** | ) | **THREE-JUDGE COURT** |
| **COMMISSION,** | ) | |
| Defendant, | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| **SEN. JOHN McCAIN,** *et al.*, | ) | |
| Intervening Defendants. | ) | |

### MEMORANDUM OPINION

(September **13th**, 2006)  [#95]

This matter is before the Court on plaintiff's motion for a temporary restraining order and preliminary injunction enjoining the Federal Election Commission from enforcing against it a provision of the Federal Election Campaign Act.  Having considered the affidavits and representations of counsel, and solely for the purpose of the motion before us, the Court makes the following findings of fact:

1.  Plaintiff Wisconsin Right to Life, Inc. (WRTL) is a nonprofit, nonstock, Wisconsin, ideological advocacy corporation recognized by the Internal Revenue Service as tax-exempt under § 501(c)(4) of the Internal Revenue Code.

2.  Defendant Federal Election Commission (FEC) is the government agency charged
with enforcing the relevant provisions of the Federal Election Campaign Act, as amended
by the Bipartisan Campaign Reform Act of 2002 (BCRA).

3.  WRTL admits that it does not qualify for any exception permitting it to pay for
electioneering communications from corporate funds because: (a) it is not a "qualified
nonprofit corporation" within the definition of 11 C.F.R. § 114.10 so as to qualify for the
exception found at 11 C.F.R. § 114.2(b)(2) to the electioneering communication
prohibition; and (b) its advertisements are "targeted" so that it does not fit the exception
for § 501(c)(4) organizations as described in 2 U.S.C. § 441b(c)(2).  2 U.S.C. §
441b(c)(6)(A).

4.  WRTL maintains a political action committee (PAC).  WRTL states that it currently
has $5,500 in its PAC fund.  (Lyons 3rd Aff. ¶ 42.)

5.  U.S. Senator Herb Kohl of Wisconsin is running for reelection this year.  Senator Kohl
faces a primary election on September 12, 2006 and seeks to be the Democratic candidate
in the November 7th general election.  Senator Russell Feingold of Wisconsin is not
currently a candidate for reelection.

6.  WRTL has in the past opposed Senator Kohl in various communications.  WRTL
states that it has not endorsed Senator Kohl's 2006 candidacy, and that it has not endorsed
Senator Kohl's Republican opponent and has no intention of doing so.  (Lyons 3rd Aff. ¶¶
27-30.)

2

7.  The Child Custody Protection Act (CCPA), S. 403, was passed by the Senate on July 25, 2006. WRTL supports the CCPA, which would impose restrictions on minors' ability to obtain an abortion without parental consent. At the time WRTL filed its motion, a House-Senate conference committee had not been named to reconcile the bill with the version passed by the House. (Lyons 3rd Aff. Ex. B.)

8.  On August 14, 2006, WRTL Executive Director Barbara Lyons received an email "Action Request" from the Federal Legislation Department of the National Right to Life Committee (NRLC). The Action Request urged support for the CCPA and encouraged its recipients to "[e]xpress your distress that 'Senate Democrats are blocking the parental notification legislation.'" (Lyons 3rd Aff. Ex. B.)

9.  WRTL believes that the matter is likely to come to a vote by September 11, 2006 or soon thereafter, before Congress recesses in early October. (Lyons 3rd Aff. ¶ 13.)

10.  WRTL wishes to run a 60-second radio advertisement in support of the CCPA. The text of the proposed ad is as follows:

> Listen up, parents. Wisconsin requires parental consent before your minor daughter can have an abortion. But, she can be taken to Illinois for an abortion that is kept secret from you. Imagine, your daughter can be taken <u>across state lines</u> for a major surgical procedure without your knowledge or consent.
>
> The U.S. Senate recently passed a bill to protect parents from secret abortions. Fortunately, Senator Kohl voted <u>for</u> the rights of parents. But, sadly, Senator Feingold did not.
>
> Your help is urgently needed because some Senators are holding up further action on the bill.
>
> Please call Senators Kohl and Feingold at 202-224-3121 and urge them to stop efforts by the Senate Democratic leadership to hold up a bill

which will prevent secret abortions. That's 202-224-3121.

Paid for by Wisconsin Right to Life, which is responsible for the content of the advertising and not authorized by any candidate or candidate's committee.

(Lyons 3rd Aff. Ex. D.)

11. WRTL states that it intends to run materially similar non-broadcast communications in support of the CCPA. (Lyons 3rd Aff. ¶ 20.) If granted a preliminary injunction, WRTL states that it "will use its general corporate treasury funds to pay for radio broadcasting" of the CCPA ad. (Lyons 3rd Aff. ¶ 22.) WRTL also states that "[i]f fundraising permits," it will pursue a broadcast campaign of the CCPA ad costing $11,500. (Lyons 3rd Aff. ¶ 23 & Ex. E.)

12. WRTL anticipates that the CCPA ad will be considered an electioneering communication for purposes of federal statutory and regulatory definitions under 2 U.S.C. § 434(f)(3) and 11 C.F.R. § 100.29 if aired during the 30 days preceding the September 12, 2006 Wisconsin primary election or during the 60 days preceding the November 7th general election.

13. Upon broadcast of the CCPA ad, the FEC could begin an investigation. The FEC states that the administrative investigation likely would not be completed until long after the broadcast of the CCPA ad. Even if the FEC concluded its investigation by instituting an enforcement action, WRTL could present it constitutional argument *de novo* in federal court before being subject to any penalties pursuant to 2 U.S.C. 437g(a)(6).

4

## LEGAL CONCLUSIONS AND ANALYSIS

Plaintiff Wisconsin Right to Life seeks a judgment declaring portions of the BCRA unconstitutional as applied to it under the facts set forth in its complaint. WRTL brings this motion for a temporary restraining order and preliminary injunctive relief to prevent FEC enforcement of BCRA with regard to a particular radio advertisement that WRTL would like to broadcast in the coming days.

This litigation concerns 2 U.S.C. § 441b, a section of the Federal Election Campaign Act, as amended by the Bipartisan Campaign Reform Act of 2002. Section 441b prohibits "any corporation whatever, or any labor organization" from producing "any applicable electioneering communication." §§ 441b(a)-(b). An "electioneering communication" is defined as "any broadcast, cable, or satellite communication which (I) refers to a clearly identified candidate for Federal office; (II) is made within (aa) 60 days before a general . . . election for the office sought by the candidate; or (bb) 30 days before a primary . . . election . . . for the office sought by the candidate; and (III) . . . is targeted to the relevant electorate." 2 U.S.C. § 434(f)(3). A corporation's political action committee, however, is not subject to the electioneering communication rule. A nonprofit corporation such as WRTL may solicit PAC contributions only from its members, 2 U.S.C. § 441b(b)(4), and a member's annual aggregate contributions to all such PACs

5

may not exceed $5,000.  2 U.S.C. § 441a(a)(1)(c).

WRTL claims that section 441b violates its First Amendment rights.  "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people . . . to petition the Government for a redress of grievances."  U.S. CONST. amend. I.

The instant motion was filed on August 25, 2006, but this case has a history. When WRTL filed this lawsuit in August 2004, this Court denied WRTL's first motion for a preliminary injunction.  That injunction would have permitted WRTL to continue broadcasting three advertisements that would have been prohibited "electioneering communications" during the run-up to the 2004 federal elections.  Mem. Op. and Order (Aug. 17, 2004).  This Court then dismissed the case, finding that "WRTL's as-applied challenge to BCRA is foreclosed by the Supreme Court's decision in *McConnell [v. FEC*, 540 U.S. 93 (2003)]."  Mem. Op. and Order (May 10, 2005).  On direct review, the Supreme Court vacated that decision and remanded the case "for the District Court to consider the merits of WRTL's as-applied challenge in the first instance."  *WRTL v. FEC*, 564 U.S. __, 126 S. Ct. 1016, 1018 (2006).  On March 23, 2006, this Court granted a motion to intervene as defendants brought by Senator John McCain and Representatives Tammy Baldwin, Christopher Shays, and Martin Meehan, pursuant to BCRA section 403(b).  The Court set a schedule for discovery and set a summary judgment hearing for September 18, 2006.

On August 25, with summary judgment briefing substantially complete, WRTL

brought this motion based on the facts set forth above. WRTL argues that it is entitled to a temporary restraining order and preliminary injunction that would permit it to air the CCPA ad in the coming days without fear of the FEC enforcing the electioneering communication prohibition. It is undisputed that WRTL cannot now run the proposed advertisement on Wisconsin radio, using funds from its general treasury, without violating federal law: WRTL is a corporation;[1] radio is a broadcast medium; the CCPA ad refers to a clearly identified federal candidate; the ad would be targeted to the relevant electorate; and WRTL filed its motion less than 30 days before the Wisconsin primary election and it is now less than 60 days before the November general election.

We have denied WRTL's motion. Preliminary injunctive relief is an extraordinary remedy and we conclude that it is not warranted in this case. "A court considering a plaintiff's request for a preliminary injunction must examine whether: (1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by the injunction." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). Because the same four factors are balanced in an application for a temporary restraining order, *see, e.g., Boehringer Ingelheim Corp. v. Shalala*, 993 F.Supp. 1, 1 (D.D.C. 1997), herein we address the matter as an application for a preliminary injunction.

---

[1]     It is not, though, a "qualified nonprofit corporation" within the definition of 11 C.F.R. § 114.10, *see* Findings of Fact ¶ 3.

These factors must be weighed in relation to each other.  A weak showing on one factor may be outweighed by a strong showing on another.  *See Serono Labs.*, 158 F.3d at 1318; *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).  The test is flexible, but the plaintiff must demonstrate at least some irreparable injury.  "The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (citation omitted)).  The defendants argue that WRTL has failed to demonstrate irreparable injury and that the injunction should be denied on that basis alone.  We do not agree that the matter is so simple.

When freedom of speech or the right to petition is the basis of an application for a preliminary injunction, the plaintiff is often able to show at least some harm because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-374 (1976) (plurality op.).  On the other hand, simply alleging a violation of free speech or petition rights does not establish irreparable injury for purposes of preliminary injunctive relief. *Nat'l Treasury Employees Union v. United States*, 927 F.2d 1253, 1254-55 (D.C. Cir. 1991) ("*NTEU*").

It is true that irreparable injury and likelihood of success on the merits are interrelated inquiries.  *See Del. & H. Ry. Co. v. United Transp. Union*, 450 F.2d 603, 619-

8

20 (D.C. Cir.), *cert. denied*, 403 U.S. 911 (1971). But they are not the same thing. *Cf.*
*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006) (in
the context of an alleged Establishment Clause violation, "a finding of irreparable injury
is but one of four elements that comprise the preliminary injunction framework.")

In this case, denial of the preliminary injunction harms WRTL. Whatever the
ultimate merit of its claim, WRTL's concerns are not mere allegations. Using general
treasury funds, WRTL wishes to run its CCPA radio ad *now*. A federal statute forbids it.
The harm to WRTL's First Amendment interests is clear. Two years ago, we held that
*McConnell* categorically foreclosed as-applied challenges to section 441b. The Supreme
Court has since reversed that decision. *WRTL*, 126 S.Ct. at 1018. We are satisfied that if
the injunction were granted, WRTL would indeed communicate its political message in a
manner that the law now prohibits. *Compare NTEU*, 927 F.2d at 1254-55.

However, a showing of injury does not end the Court's inquiry. There are four
factors to consider, as well as the relative weight of the arguments for each. The
magnitude of WRTL's injury must be put in context. WRTL has forever lost the
opportunity to use general treasury funds to run its CCPA advertisement on the days of its
choosing without risking legal sanctions, but the injury should not be overstated. WRTL
may express its message in other ways. *See McConnell*, 540 U.S. at 206-07. WRTL's
political action committee may fund the advertisement. WRTL may exhort Wisconsin
voters to contact Senator Kohl through advertising in non-broadcast media, such as

newspapers and the Internet. And by altering its advertisement to omit clear references to Senator Kohl, WRTL may spend unlimited general treasury funds on radio ads urging the Wisconsin public to lobby for the enactment of the Child Custody Protection Act. For purposes of preliminary injunction analysis, we therefore find that WRTL's injury, while real, is not of great weight.

As for the harm a preliminary injunction would impose on the opposing party, WRTL argues that "[t]he FEC can have no weighty interest in enforcing a law in a situation in which the Supreme Court assumed that it might not be constitutionally supportable." (Memorandum at 12.) But the question is not whether the FEC can have an interest in violating the Constitution; the question is whether enjoining the FEC from performing its statutory duty constitutes a substantial injury to the FEC. We hold that it does. That injury to the Commission would be far greater than WRTL's harm from an FEC administrative investigation which carries little threat of imminent or certain sanction. It is clear that even if an administrative investigation is opened, the investigation likely would not conclude until long after the CCPA ad has been broadcast.

We also find that granting the injunction would not further the public interest. The public has a strong interest in the enforcement of laws passed by Congress and signed by the President. "The presumption of constitutionality which attaches to every Act of Congress is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of applicants in balancing hardships." *Walters v. Nat'l*

*Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers).

In upholding section 441b against a facial challenge, the Supreme Court found that the

electioneering communication prohibition furthered compelling government interests.

*See McConnell*, 540 U.S. at 205.  It is true that the Supreme Court has now made it clear

that as-applied challenges are permitted.  But the Supreme Court remanded this case for

this Court "to consider the merits of WRTL's as-applied challenge in the first instance."

*WRTL*, 126 S. Ct. at 1018.  This command, without more, does not eliminate the

presumption of constitutionality.  WRTL has not established that a preliminary injunction

would serve the public interest, and we find that the balance of hardships does not favor

WRTL.

Turning to the likelihood that WRTL will succeed on the merits, and evaluating all

considerations together, we find that the strength of WRTL's constitutional claim fails to

tip the scale in favor of granting an injunction.  The electioneering prohibition is

presumed constitutional.  The defendants argue that, on the merits, the prohibition is

consistent with the First Amendment because WRTL retains alternative methods of

communicating its message.  In *McConnell*, the Supreme Court discussed these

alternatives in concluding that the electioneering prohibition is facially constitutional.

*McConnell*, 540 U.S. at 203-09.  As noted above, these alternatives mitigate WRTL's

injury.  Whether these alternatives *are* constitutionally adequate is a determination that

must await completion of summary judgment briefing and argument.  Defendants also

11

argue that WRTL's CCPA ad falls squarely within the class of advertisements held regulable in *McConnell*, which found that "[t]he justifications for the regulation of express advocacy apply equally to ads aired during those periods if the ads are intended to influence the voters' decisions and have that effect." *Id.* at 206. WRTL rejects each of these arguments, but on the incomplete record before us we cannot conclude that WRTL's likelihood of success on the merits outweighs the balance of hardships in favor of the defendants.

We also note the procedural posture of this case. WRTL's complaint was filed in August 2004, and it focused on three specific broadcast advertisements that WRTL wished to run during the statutory blackout period beginning August 15, 2004. Following our dismissal and the Supreme Court's remand, these claims are now back before us. In contrast to the instant proceeding, the defendants have conducted extensive discovery concerning WRTL's 2004 advertisements. Summary judgment briefing will be complete in a matter of days, and a hearing is scheduled for September 18. Though we reserve the right to reexamine our jurisdiction on a more complete record, we agree with WRTL that its August 25, 2006 motion for a preliminary injunction falls within the scope of its complaint and is properly before this Court. But we cannot conclude that a preliminary injunction is warranted. Therefore, we have denied plaintiff's motion.

This the **13**ᵗʰ day of September, 2006.

United States Circuit Judge

United States District Judge

United States District Judge